IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Docket No. 3:24-CR-00237-FDW

UNITED STATES OF AMERICA

vs.

MARCUS JAMAL SHANKLE,

                Defendant.

**NOTICE OF APPEAL & MOTION
TO REVOKE DETENTION ORDER**

NOW COMES the Defendant, Marcus Shankle[1], who appeals, by and through his attorney, Mekka Jeffers-Nelson, pursuant to Title 18 U.S.C. § 3145(b), the detention order issued by United States Magistrate Judge James P. Mazzone on December 13, 2024.

In support of this motion, defendant avers as follows:

1. On or about December 9, 2024, Mr. Shankle was arrested pursuant to a Bill of Indictment filed on November 19, 2024, alleging that he was in possession of a firearm as a convicted felon.

2. At the time of his arrest, Mr. Shankle was at Atrium Main Hospital following a second brain surgery for a gunshot wound to the head on October 3, 2024.

3. On December 13, 2024, Mr. Shankle had a detention hearing before Magistrate Judge James P. Mazzone and ordered detained.

4. At the Detention Hearing, the Government argued that Mr. Shankle was a danger

---

[1] "Hereinafter Mr. Shankle"

to the community, citing the alleged facts of the instant case and his prior record.

5. Contrary to the government's argument, Mr. Shankle is not a danger to the community because Mr. Shankle is physically not capable of being a threat to the community or society. Mr. Shankle's current medical condition has him confined to a wheelchair.

6. Mr. Shankle does not have the ability to stand or walk on his own, and has very limited mobility at all. Mr. Shankle has lost most of his vision in his left eye[2] due to where the bullet entered his brain and has lost 60 pounds in the last two months due to his injuries and inability to eat at times.

7. Mr. Shankle was shot in the head by officers, at very close range, just a couple of months ago. The bullet fractured his skull, and he currently still has the bullet lodged at the base of his skull and top of his spine.

8. Mr. Shankle has undergone two brain surgeries in the last 40 days.

9. At the time of his initial surgery on October 3rd, Mr. Shankle spent 20 days in the hospital after which he was released to a local jail on October 23, 2024.

10. However, just a few days later, on October 27, 2024, Mr. Shankle was rushed back to the hospital by emergency transport[3] where he had to undergo a second emergency brain surgery. Mr. Shankle was found in his jail cell bed in extreme pain and unable to move. Mr. Shankle reports that jail officials presumed that he was pretending. However, the hospital discovered that Mr. Shankle not only had an infection in his brain, but also had a cyst on his brain. Thus, had he not been transported back to the hospital when he was, he may not have survived.

---

2 See attached Mecklenburg County Sheriff's Office photo of Mr. Shankle
3 See attached EMS bill.

11. The severity of the injury has left Mr. Shankle with a very limited range of mobility. He is unable to stand up on his own, unable to walk, and is unable to grip anything with his hands. Mr. Shankle reports repeatedly dropping his food tray, medication, and other items.

12. While in custody, Mr. Shankle has been treated beyond poorly. Due to his injuries and lack of mobility, Mr. Shankle is extremely dependent on the limited jail staff. He reports sitting on feces for 24 hours waiting for staff to assist him on one occasion, and on another, he reports waiting for over 30 minutes for staff to help him on the toilet. When staff did not come, Mr. Shankle had to humble himself and accept the assistance of another inmate to get on the toilet and face the humiliation of relying on a male nurse to wipe his bottom and assist him in getting off the toilet.

13. While in custody, Mr. Shankle has not been able to receive the requisite treatment nor medication that he needs to recover from his injuries.

14. At the time he was shot in the head, Mr. Shankle was in a walking boot with a broken foot. Mr. Shankle was supposed to have surgery to repair his foot but was shot in the head prior to obtaining this surgery.

15. Additionally, since the shooting, Mr. Shankle was prescribed approximately 10 different medications to include oxycodone and lidocaine patches, for pain, which he has not be able to receive while in custody. Mr. Shankle was also prescribed protein supplements to bring his potassium to a safe level in hopes of preventing him from having any strokes, according to his physician.

16. Simply put, Mr. Shankle is physically incapable of being a danger to society, and/or himself.

17. In support of its arguments for detention, the government cites Mr. Shankle's prior criminal history. However, Mr. Shankle has no prior misdemeanor or felonious convictions of violence.[4] In fact, his only prior felony conviction is his prior federal drug offense in 2013 that did not involve any alleged firearm violation nor any alleged acts of violence. Most of Mr. Shankle's prior convictions are traffic-related matters. Thus, Mr. Shankle's prior criminal history does not support detention.

18. Additionally, Mr. Shankle is not a flight risk. Mr. Shankle has very strong ties to this community. Mr. Shankle was not only born and raised in Charlotte, Mecklenburg County, but his family lives here. That family includes his mother, 14 sisters and brothers, his children, his fiancée, and a host of uncles, aunts, cousins, and friends.

19. Mr. Shankle also has strong family support. Mr. Shankle was supported in court at the Detention Hearing by several members of his family, including his mother, two brothers, fiancée and a friend.

20. Since Mr. Shankle is not even able to flee or pose a risk of danger to the community, he respectfully believes the Magistrate Judge erred in ordering him detained.

21. Further, in reviewing the court's order for his detention, it appears that the court relied upon multiple factual inaccuracies. On page 2 of the Order, the court notes that "The Defendant Has Failed to Carry Defendant's Burden Under Rule 32.1(a)(6)." However, Rule 32.1 governs defendants accused of violating probation or supervised release. Yet Mr. Shankle was not on either nor was he

---

[4] During the Detention Hearing, the government mentioned dismissed charges of violence against Mr. Shankle. However, these matters were dismissed for a reason and without additional information about the alleged facts of these cases, Mr. Shankle avers that it would be inherently unfair to hold him responsible for these matters as if he had been convicted of them when in fact he was not.

21. charged as such. Thus, in finding that Mr. Shankle failed to carry his burden under Rule 32.1(a)(6), the court placed an unfair and unauthorized burden on the defendant that did not apply to him.

22. Likewise, in its list of findings on page 3 of the order, the court erroneously finds that Mr. Shankle participated in criminal activity while on probation, parole, or supervised release. However, Mr. Shankle was not on any probation, parole, or supervised release of any sort at the time of this alleged offense.

23. Further, the court found that Mr. Shankle has a "history of violence or use of weapons." Yet, Mr. Shankle has no prior convictions for either. Mr. Shankle has no prior violent offenses of conviction and the only firearm related offense he has is a misdemeanor carrying a concealed weapon from 2009, when he was 19 years old, but with no evidence that he did anything with the weapon aside from being in mere possession of it. It should further be noted that at the time of that offense, Mr. Shankle was not a prohibited person and therefore, he was not prohibited from possessing the firearm. His only mistake was that he had the firearm concealed in some fashion.

24. Lastly, the court notes a history of alcohol and substance abuse. While the court is correct that Mr. Shankle has used alcohol and marijuana in his past, it is equally important to note that he has not used either in the last 2 years.

25. If released Mr. Shankle can continue to reside with his mother or has the option to stay with his fiancée or his uncle, all of which are committed to ensuring that he is in court when required and that he receives the medical treatment that he needs.

26. Mr. Shankle can be placed on house arrest with location monitoring, which will

allow him to be at home to get the necessary care he needs to heal and would also allow the Court to know where he is at all times.

27. Mr. Shankle, therefore, prays this Honorable Court to review the Magistrate's decision *de novo* per United States v. Clark, 865 F.2d 1433, 1436 (4th Cir. 1989), and reverse the order of detention issued on December 13, 2024. This Motion shall be decided promptly. 18 U.S.C. § 3145(c). A hearing on this matter is requested.

WHEREFORE, Marcus Shankle prays that this Court reverse the Magistrate's decision of detention and order his release on bond with home arrest and location monitoring.

This the 20th day of December 2024.

Respectfully submitted,

**s/ Mekka Jeffers-Nelson**
Mekka Jeffers-Nelson Bar Number: 26918
Attorney for Defendant
P.O. Box 49631
Charlotte, North Carolina 28277-0082
Telephone: (704) 544-6728
Fax: (704) 544-7985
E-mail: jnelson166@aol.com

# CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I served a true and correct copy of the foregoing Notice of Appeal & Motion to Revoke Detention Order electronically through the ECF System in use in the United States District Court for the Western District of North Carolina, on the following interested parties of record:

Timothy.Sielaff@usdoj.gov

**s/ Mekka Jeffers-Nelson**
Mekka Jeffers-Nelson Bar Number: 26918
Attorney for Defendant
P.O. Box 49631
Charlotte, North Carolina 28277-0082
Telephone: (704) 544-6728
Fax: (704) 544-7985
E-mail: jnelson166@aol.com